**WESTERN TANK & STEEL CORPORATION, Appellant,**

v.

**Johnnie GANDY, Appellee**

**No. 7610**

Court of Civil Appeals of Texas. Texarkana.

Dec. 15, 1964.

Royal Brin, Jr., Robert K. Drummond, Strasburger, Price, Kelton, Miller & Mar-tin, Dallas, Victor Hlavinka, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellant.

Woodrow Edwards, Mt. Vernon, for appellee.

FANNING, Justice.

This is a venue case. Johnnie Gandy, a resident of Franklin County, Texas, instituted suit in the District Court of said county seeking damages for loss of part of the cotton crop he might have made in 1963. Western Tank & Steel Corporation, a Texas corporation, and AFCO Flame Cultivator, a foreign corporation, were named as defendants, and the suit is rested alternately upon allegations of breach of contract and negligence in failing to furnish plaintiff Gandy expert assistance in assembling, setting up and regulating the AFCO Flame Cultivator that plaintiff purchased from Shelton Butane Company in Mount Vernon, Franklin County, Texas. Gandy also contends to the effect that Western Tank & Steel Corporation (as well as AFCO) breached an alleged "implied warranty." AFCO Flame Cultivator Company was the manufacturer and Western Tank & Steel Corporation was its Texas distributor. Shelton bought the cultivator from Western Tank and re-sold it to Gandy by written sales contract.

Western Tank & Steel Corporation duly filed its plea of privilege to be sued in Lubbock County, Texas, the county of its residence. Gandy duly filed a controverting affidavit. The trial court overruled Western's plea of privilege and it has appealed. AFCO did not file a plea of privilege. Shelton Butane Company was not made a party to the suit.

Appellee seeks to maintain venue in Franklin County, Texas, under subdivisions 23 and 9a of Art. 1995, Vernon's Ann.Tex. Civ.St.

Subdivision 23, Art. 1995, V.A.T.C.S. reads in part as follows:

"Suits against a private corporation, association, or joint stock company may be brought * * * in the county in which the cause of action or part thereof arose * * *."

Subdivision 9a, Art. 1995, V.A.T.C.S., reads as follows:

"Negligence. A suit based upon negligence per se, negligence at common law or any form of negligence, active or passive, may be brought in the county where the act or omission of negligence occurred or in the county where the defendant has his domicile. The venue facts necessary for plaintiff to establish by the preponderance of the evidence to sustain venue in a county other than the county of defendant's residence are:

"1. That an act or omission of negligence occurred in the county where suit was filed.

"2. That such act or omission was that of the defendant, in person, or that of his servant, agent or representative acting within the scope of his employment."

"3. That such negligence was a proximate cause of plaintiff's injuries."

Appellee Gandy, engaged in cotton farming, purchased an AFCO flame cultivator from Shelton Butane Company in March, 1963, after having attended demonstration meetings and after having seen a film showing the work of the flame cultivator. Paul Norman, an agent of Western, at the time of the showing of the film, stated to the effect that there were field men to work with purchasers. Gandy testified to the effect that he purchased a cultivator as a result of such meetings and what Shelton told him and that Shelton also told him that trained men would be available. The cultivator was purchased by Gandy from J. W. Shelton, who did business as Shelton Butane Company, in Mount Vernon, Franklin County, Texas, and the cultivator was delivered and assembled by Shelton. Later

the cultivator was reduced from a four-row to a two-row machine around the middle of May, 1963. Gandy began using the flame cultivator on May 30, 1963. Flame cultivation was new to Franklin County and Gandy apparently had the second one in that county, and there was also a flame cultivator in an adjoining county. Gandy had difficulties in getting the cultivator to burn and complained to Shelton. Shelton tried to adjust it but was unable to do so satisfactorily and he called Mr. Rae, a Vice-President of Western, between June 3 and June 6, and Rae advised him that the probable cause of the trouble was water in the tank and suggested that alcohol should be used and Shelton tried this without success. Gandy complained to Shelton again on June 7, 1963, and Shelton contacted Hannaford, an agent of AFCO, who came to Gandy's farm on June 9, along with another butane dealer, and worked on the cultivator and made adjustments on it. Gandy complained again to Shelton about 2 days after Hannaford's visit and quit flaming on June 15, 1963. Gandy was thereafter (on July 3) visited on his farm by Malinowski, an agent of Western, who made some adjustments on the cultivator, and advised that the cotton should be flamed twice more at burner pressure of 30–35 pounds but appellee Gandy refused to flame the cotton any more. Shelton, on July 4, raised the burners to 35 pounds pressure and on July 4, 1963, flamed four rows of appellee's cotton and burned up the cotton. (Malinowski was not present when Shelton burned Gandy's four rows of cotton.)

It is clear that Shelton never made any trade to become a dealer for Western; whenever he had a purchaser he would buy a cultivator from Western and then sell it to the purchaser. He had similarly bought two cultivators from Western before buying the one he re-sold to Gandy. Shelton had no agency contract with Western and no stock of their flame cultivators on hand but would simply buy one from Western when he found a purchaser.

In our opinion, the evidence shows that title to the cultivator passed from Western to Shelton. Shelton then being the lawful owner of the cultivator, sold it to Gandy.

■ In a suit on a contract, proof of the making of the contract and of the facts constituting the breach must be made and that the contract was made or the breach occurred in the county where the suit was brought. Clark, Venue in Civil Actions in Texas, p. 131.

■ Privity of contract is an essential element of recovery in a cause of action based upon a contractual warranty, either expressed or implied. Brown et al. v. Howard et al., Tex.Civ.App., 285 S.W.2d 752, writ ref., n. r. e. (1955).

We find no evidence of probative force in the record of a contract between appellee Gandy and appellant Western Tank, as the sale of the flame cultivator was from appellant Western to Shelton, and Shelton sold the flame cultivator to Gandy. It is our further view that the demonstration meetings, together with the film shown by Western's representative, together with his representations that field men would be available to service the flame cultivators of AFCO, would not be sufficient evidence to establish any contract between appellee Western and appellant Gandy, as it is our view that the only contract entered into and involved here was the written contract between Shelton and Gandy. Furthermore, we find no evidence of probative force in the record to show the "breach" of any alleged or assumed contract between Western Tank and Gandy occurring in Franklin County, Texas.

■■ It is our further view that under the record in this cause there was no evidence of probative force to show any character of implied warranty on the part of appellant Western Tank to appellee Gandy. As above stated, Western did not sell the cultivator to Gandy; Gandy bought it from Shelton. An implied warranty is an inherent term of a sale contract, arising on the part of a seller in connection with a contract of sale. Gates Rubber Co. v. Wood, Tex.Civ.App., 374 S.W.2d 785, no writ (1964). Warranty, either express or implied, must grow out of contractual relations between the parties. Coca Cola Bottling Co. of Ft. Worth v. Smith, Tex. Civ.App., 97 S.W.2d 761, no writ (1936).

In Luse v. Valley Steel Products Company, 293 F.2d 625, a 5th Circuit case dealing with Texas law, Luse bought tubing from Transcontinental, which in turn ordered it from Valley Steel to fill Luse's order, and the court held that only Transcontinental, the seller, could be liable to Luse for breach of contract, and not Valley Steel, the jobber. The Texas cases cited by the Federal Court in support of said decision include Talley v. Beever & Hindes, 33 Tex.Civ.App. 675, 78 S.W. 23, no writ (1903); Brown et al. v. Howard et al., supra, 285 S.W.2d 752 and Baylor v. Eastern Seed Company, Tex.Civ.App., 191 S.W.2d 689, no writ (1945).

In Baylor v. Eastern Seed Co., supra, 191 S.W.2d 689, Baylor sued Eastern Seed Company, seeking to recover damages by reason of not receiving "Babosa" onion seed as ordered by him but receiving "Blue Whistler" onion seed, with Baylor alleging that he planted and cultivated 20 acres of onions, that the seed was represented to be "Babosa" when planted but that the onions when grown were found to be "Blue Whistlers", with plaintiff Baylor further alleging that if the seed had been of the "Babosa" variety as represented the crop of onions would have been worth $150.00 per acre, or $3,000.00 for the 20 acres, but that the "Blue Whistlers" were worthless. Defendant's motion for instructed verdict was granted because the proof showed that Baylor did not purchase the onion seed from Eastern but purchased the seed from Scull's store. Scull's store had purchased the seed from Eastern and Scull's then sold it to Baylor. The Court of Civil Appeals upheld the judgment of the trial court because there was no privity of contract between Baylor and Eastern Seed Company.

Western Tank gave no written warranty of any character to Gandy. It was not the manufacturer of the flame cultivator. The law applicable and the cases relating to the liability of a manufacturer of products for human consumption, are of course not applicable to the case at bar, since the flame cultivator was not such character of product and since Western Tank was not the manufacturer.

■ We hold that under the record in this cause there is no evidence of probative force to support venue in Franklin County, Texas, under subd. 23 of Art. 1995, V.A. T.C.S.

It is clear from the evidence in this cause that Shelton was not an authorized agent of Western Tank and that when he burned the four rows of cotton of Mr. Gandy, he was acting on his own responsibility, and was not acting for Western Tank and Western Tank would not be responsible for Shelton's actions. Likewise, Hannaford was the agent of AFCO and was not the authorized agent of Western Tank, and Western Tank would not be responsible for Hannaford's negligence, if any. Malinowski was Western's agent, and adjusted the flame cultivator, but Gandy refused to use it after Malinowski's visit, and Malinowski did not burn any cotton of Gandy's. As we view it, there is no evidence of probative force of any negligence on the part of Malinowski, and if assuming that Malinowski was guilty of negligence in some manner, then it seems clear that any such negligence, if any, could not have been a proximate cause of the partial loss of any cotton crop of Mr. Gandy's, since Mr. Gandy did not follow Mr. Malinowski's advice, but refused to do so and refused to flame his cotton any more thereafter.

It is our further view that there was no evidence of probative force to sustain any implied finding that Western Tank was negligent in failing to supply assistance, nor that field representatives were available but not furnished. It appears to us that Gandy's main complaint is not so much that the flame cultivator affirmatively damaged his cotton crop (except for the four rows of cotton that Shelton burned for which no one but Shelton should be held responsible) but rather that the flame cultivator failed to benefit him as much as he hoped and had been led to believe that it would. We are of the view that such a mere absence of benefit, as against affirmative harm, does not give rise to a tort action for negligence. Furthermore there is nothing in the record to show that Gandy could not have taken other measures against weeds and grass (just as other farmers would have done who did not have flame cultivators) as he would have done if he had not had the flame cultivator.

However, even if it be assumed that Western Tank was guilty of some character of negligence, it is our view that under the record in this cause, such assumed negligence, if any, was not a proximate cause of plaintiff's damages. In this connection see the following authorities: Biggers v. Continental Bus System, Inc., 157 Tex. 351, 303 S.W.2d 359; Hanson v. Green, Tex.Civ. App., 339 S.W.2d 381, writ refused; Genell, Inc. v. Flynn, 163 Tex. 632, 358 S.W.2d 543.

■ We further hold that under the record in this cause there is no evidence of probative force to support venue in Franklin County, Texas, under Subd. 9a of Art. 1995, V.A.T.C.S.

The judgment of the trial court overruling appellant's plea of privilege is reversed and judgment is here rendered ordering that the cause as to appellant Western Tank be transferred to one of the District Courts of Lubbock County, Texas.

Reversed and rendered.